UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

MELISSA FIORE, CYNTHIA VASQUEZ     No.
and BARBARA SELDIN, Individually and on
Behalf of All Others Similarly Situated,     **CLASS ACTION COMPLAINT**

                Plaintiffs,     **DEMAND FOR JURY TRIAL**

v.

INGENIOUS DESIGNS, L.L.C.,

                Defendant.

-------------------------------------------------------- X

## CLASS ACTION COMPLAINT

Plaintiffs, Melissa Fiore, Cynthia Vasquez and Barbara Seldin, individually and on behalf of themselves and others similarly situated, sue Defendant INGENIOUS DESIGNS, L.L.C. ("Defendant"), for violations of New York and California law, and allege as follows:

## PARTIES, JURISDICTION & VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (federal diversity jurisdiction), as one or more members of the proposed class are citizens of a different state from Defendant and the aggregated amount in controversy likely exceeds the jurisdictional amount required by that code section ($5,000,000).

2. At all times material, Plaintiff Seldin is and was a citizen of the State of California, residing in San Diego, San Diego County, California. Plaintiff Seldin purchased the My Little Steamer product at issue in this action at a Bed, Bath & Beyond store located in San Diego County, California in the Mission Valley Shopping Center in September 2016.

3. At all times material, Plaintiff Vasquez is and was a citizen of the State of

California, residing in Mission Viejo, California, in Orange County, California. Plaintiff Vasquez purchased her My Little Steamer product at issue in this action at a Bed, Bath & Beyond on September 9, 2018.

4.      At all times material, Plaintiff Fiore is and was a citizen of the State of New York, residing in Brooklyn, New York. Plaintiff Fiore purchased her My Little Steamer product at issue in this action at a Bed, Bath & Beyond store in Brooklyn, New York the week before Christmas in December 2015.

5.      Venue is appropriate in this District because Plaintiff Fiore is a citizen of the District, Defendant has sold its goods within this District, and Defendant has its principal place of business in Ronkonkoma, New York, which is located in this District.

6.      Ingenious Designs, LLC., ("Ingenious Designs") is a wholly owned subsidiary of the Home Shopping Network ("HSN") and is a foreign limited liability company, formed under the jurisdiction and laws of Delaware. Ingenious Designs' principal place of business is in Ronkonkoma, New York. Ingenious Designs manufactures, sells and distributes consumer products, including the My Little Steamer and the My Little Steamer Mini through HSN's television network and digital platforms as well as retailers such as Target and Bed, Bath & Beyond. Joy Mangano, president of Ingenious Designs, is a television personality who appears regularly on the HSN shopping networks to promote Ingenious Designs' products.

7.      This Court has personal jurisdiction over Defendant because Defendant's principal place of business is in Ronkonkoma, New York.

**NATURE OF THE CASE**

8.      This class action lawsuit seeks redress for Defendant's manufacturing, sale and distribution of a dangerous product, the danger which was exclusively known to Defendant and

which was not disclosed to consumers. The My Little Steamer and My Little Steamer Mini (the "My Little Steamer Products" or "Steamers" or "Products") are portable clothing steamers which due to manufacturing and/or design defects fail, causing boiling water to leak from seals and/or spew on product users and melt the products' plastic housing when used properly. Despite Defendant's knowledge of these defects and dangerous conditions, Defendant failed to warn consumers of the danger and marketed, sold and distributed these products throughout the States of New York and California. This lawsuit seeks damages and injunctive relief on behalf of Plaintiffs and members of the classes for purchasing a product that is not safe, merchantable or fit for its intended purpose and attorneys' fees and other costs associated with bringing this action.

9.      This action is brought as a class action and may properly be so maintained pursuant to Federal Rule of Civil Procedure 23 and applicable case law.  In addition to injunctive relief, this action seeks class-wide damages based on Defendant's misrepresentations and misleading statements and material omissions alleged herein.  This action does not seek recovery for personal injuries, emotional distress or bodily harm that may have been caused by misrepresentations and misleading statements made by Defendant.

## **FACTUAL ALLEGATIONS**

10.      In 2003 Defendant released the My Little Steamer Products to the market for the first time.  Since that time the Products have been promoted, marketed, sold and distributed through the HSN television network as well as through digital platforms, outlet stores and other retailers.

11.      Defendant learned of the dangerous and defective nature of the My Little Steamer well before Plaintiffs purchased their My Little Steamers. As early as July 2013, consumers who had purchased a My Little Steamer complained of problems with the defective steamers. Complaints posted on the Internet demonstrate that the defect is widespread and dangerous, and

3

that it manifests without warning. The complaints also indicate Defendant's awareness of the

defect:

- Posted September 10, 2013: "My daughter was badly burned as Joy Mangano's My Little Steamer became a boiling watering gun and projected water aggressively out of the steamer. She was no where near the steamer, it really became a water gun suddenly . . . so scary and traumatizing!!! Still to this day anytime she sees hot water she panics:( There are so many burned complaints on this steamer. The company continues to deny the steamer is the cause and at first told me to contact Target to return the steamer and file with their safety team. This was the beginning of me realizing they will refuse to own the fact their steamer caused my daughter's burns. PLEASE RESEARCH THIS STEAMER . . . I have tons of complaints on this being a very dangerous product!!!

- Posted July 2, 2013: "I would never recommend Joy Mangano's My little Steamer 90 Watt. I suffered second and third degree burns all over the right side of my body & trauma as well. The steamer exploded, the top flew off in a matter of seconds and the bottom part flew at me with all of the hot scorching water that fell all over the right side of my body. This is a very dangerous product which should not be on the market, there is no setting and to my surprise I didn't know it would cause such damage to me physically! I now have permanent scars and medical bills I don't need, aside from the trauma and suffering/pain. Please I am warning everyone do not buy this product, it's a hazard to every household!"

- Posted July 15, 2014: "BURN INJURY WARNING | TERRIBLE CUSTOMER SERVICE [MUST READ REVIEW]. You NEED TO BEWARE OF THE DANGERS OF THIS STEAMER!! My Grandmother had purchased this steamer as a gift for me. Don't get me wrong its a good steamer, but it CAN CAUSE BURNS. I was using it one day and the water level was getting low, but I was done steaming anyway. So i turned the steamer off and set it on a shelf. The water was still bubbling inside as it should but then out of the middle of nowhere hot water shot right out of the top of the steamer. It got all over the shelf that it was on and water had leaked all the way down my wall. The water was very very hot so i had to allow it to cool before I could clean it up. I do NOT recommend this as a gift because it can seriously injure somebody even when being used correctly

  Their customer service department was absolutely horrid!! I had told them that I received this as a gift. I described the problem to the lady that I had spoken to. She told me that she needed some type of information to prove that I actually had the steamer and that it was purchased. I gave her the first and last name of the person whom had bought it for me. She then told me that the steamer was only ONE year old and that it was out of warranty. Ok big deal so I can't get a new one. HOWEVER, I recommended to her that she tell her supervisor about the issue so maybe they could put a little warning on the packaging or instructions or whatever. She said ok but she needed my personal info. I proceeded to give her my first and last name but then she asked for my address. I asked her why it was necessary and she said it was proof that she talked to

me on the phone. But if they weren't even going to send me a replacement steamer why should they need that. I said NO way would I give that out if I wasn't even going to receive anything in the mail. I asked to speak for a supervisor and she then gave me attitude and said that to do that I needed to provide my address.

NEVER AGAIN WILL I BUY A PRODUCT FROM THIS COMPANY!! BUYER BEWARE!! THERE ARE BETTER STEAMERS OUT THERE!!"

12.     Attached as Exhibit A are additional exemplary complaints taken from multiple websites detailing how the My Little Steamer malfunctions when used properly, and the serious safety risk posed to consumers. As described in the complaints, many purchasers of the My Little Steamer suffered severe burns from boiling water leaking and spewing during use.

13.     In addition, in 2017, a product review video was posted to YouTube.com showing exactly how the My Little Steamer dangerously leaks boiling water.

14.     To make matters worse, during a live shoot to film video "B-roll" to be used in connection with live segments featuring Joy Mangano promoting and selling the Product on the Home Shopping Network in February 2016, while the Products were being prepared for filming and during the filming itself, hot steam and boiling water repeatedly leaked and spewed from the products burning HSN employees and the professional models being featured in the videos. The production staff opened a significant number of Products from sealed boxes that had been delivered to the video location in an effort to find a Product to film that would not leak. Many, if not all, of the Products opened by HSN's production employees dangerously leaked boiling water and spewed hot steam in a manner inconsistent with the intended use of the Products.

15.     These videos are produced and filmed internally by HSN employees and depict professional models using the Products.

16.     In or before February 2016 Defendant became aware that My Little Steamer Products it was promoting, marketing, selling, and distributing were defective and dangerous. The

defective and dangerous nature of the Products was exclusively known to Defendant and not to consumers of the Products. More specifically, in February of 2016, HSN was producing and filming B-roll of the My Little Streamer Products at a house in the Hyde Park neighborhood in Tampa, Florida to be used in an upcoming live segment featuring Joy Mangano.

17.     During the live shoot, production employees and models observed gaskets failing and floating inside the water reservoir of the opened products very quickly after the Products were plugged into electrical outlets.

18.     Video footage of the malfunctioning products was shot digitally by the production crew, and as is required by HSN policies and procedures, was saved on the HSN server and labeled, "the B Roll." This footage was backed-up to the HSN digital archive/ library.

19.     The producer on the shoot, David Berggren, was so concerned that he sent email communications to senior management at HSN and Ingenious Designs, to notify the management at both companies that the products were leaking, spewing, and were dangerous and should not be sold to consumers.

20.     The Quality Control Department assured Mr. Berggren the faulty Steamers that leaked during the B-Roll location shoot were sent to Ingenious Designs in New York for testing. This information was communicated to Joy Mangano. Mr. Berggren was led to believe that My Little Steamer Products would not be sold due to their defective conditions.

**Defendant Sold the My Little Steamer Products Without Disclosing their Dangerous and Defective Nature**

21.     Within a matter of weeks thereafter, and contrary to the assurances given Mr. Berggren, HSN did live promotional television segments featuring Joy Mangano selling Defendant's My Little Steamer products.

22.     While the live segments were ongoing, additional My Little Steamers that were

new and had just been opened from their boxes to be used in the live segment were leaking and spewing boiling water off-camera, once again causing burns to models and staff.

23.     The volume of faulty My Little Steamer Products sold and shipped as a result of the live promotional segment described above is estimated to be between 50,000 and 100,000 units. These numbers do not include defective Steamers that were sold through other distribution channels and platforms.

24.     According to the Ingenious Designs Instruction and Warning pamphlet, "This product is warranted to be free from defects in material and workmanship under normal uses and service for a period of one-year from the date of original purchase with receipt."

**Defendant Knew that Consumers Did Not Want to Purchase Dangerous Products**

25.     Through Ms. Mangano's website, JoyMangano.com, Defendant promotes the Steamers as follows: "Developed over 15 years, carefully calibrated steam channels create unmatched power." "No Spitting. No Staining. No Burning. No Worries."  These representations demonstrate that Defendant knew that burning and spitting hot water were important considerations for purchasers of the Products.

26.     Defendant had a duty to disclose the existence of the safety problems with the My Little Steamer Products which were discovered at least as early as February 2016, but failed to disclose these problems to consumers.

**Plaintiff Cynthia Vasquez Purchased her My Little Steamer in September 2018 Without Knowledge of its Dangerous Nature**

27.     On September 9, 2018, Plaintiff Vasquez purchased her My Little Steamer from a Bed, Bath & Beyond, located at 25732 El Paseo, Mission Viejo, California.

28.     The packaging did not include a warning that the My Little Steamer would leak and spew boiling water during normal use.

29.     If the packaging had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Vasquez would have seen the warning and acted differently and not purchased the My Little Steamer.

30.     After Ms. Vasquez purchased the My Little Steamer and before she used it, she again looked at the packaging, and there was no warning that it would leak and spew boiling water.

31.     If the packaging had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Vasquez would have seen the warning and would have acted differently and not used the My Little Steamer.

32.     On the morning of September 30, 2018, Ms. Vasquez filled the steamer below the maximum water indicator line, put on the steamer head and plugged it into an electrical outlet. Shortly thereafter, the steamer malfunctioned and boiling water spewed out in a dangerous and unexpected manner.

33.     Ms. Vasquez suffered severe burns on her left shin and minor burns on her left foot from the steamer malfunctioning and has not used the steamer since that time for fear of being burned again.

34.     The fact that the My Little Steamer leaked and spewed boiling water when being properly used was an important fact to Ms. Vasquez.  Had she known this fact prior to purchasing the My Little Steamer Product, she would not have purchased the product.

35.     Because the My Little Steamer purchased by Ms. Vasquez malfunctions by leaking and spewing boiling water in a dangerous and unexpected manner, it cannot be used for its ordinary and intended purpose of steaming clothing without subjecting users to the risk of being burned.

**Plaintiff Seldin Purchased her My Little Steamer in September 2016 Without Knowledge of its Dangerous Nature**

36.     In September 2016, Ms. Seldin purchased a My Little Steamer Go Mini, Item No.

8

YJ-3048D-1, from her local Bed, Bath and Beyond retailer in California.  Ms. Seldin paid approximately $15.00 for the Steamer.

37.     Before purchasing the My Little Steamer, Ms. Seldin looked at the packaging. She did not see any labels on the product warning that it would leak and spew boiling water.

38.     If the packaging had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Seldin would have seen the warning and acted differently and not purchased the My Little Steamer.

39.     After Ms. Seldin purchased the My Little Steamer and before she used it, she again looked at the packaging and the instructions included with the My Little Steamer, and there was no warning that it would leak and spew boiling water.

40.     If the packaging and/or instructions had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Seldin would have seen the warning and would have acted differently and not used the My Little Steamer.

41.     Because the product packaging did not contain a warning, Ms. Seldin used the Steamer, which began to leak and spew boiling water whenever she plugged the unit into an electrical outlet.  On each occasion the steamer leaked and spewed boiling water and steam in a dangerous way onto Ms. Seldin while she was using the unit as instructed.  Due to concern for her safety (i.e., Ms. Seldin wanted to avoid burns to herself), she stopped using the My Little Steamer.

42.     The fact that the My Little Steamer leaked and spewed boiling water when being properly used was an important fact to Ms. Seldin.  Had she known this fact prior to purchasing the My Little Steamer Product, she would not have purchased the product.

43.     Because the My Little Steamer purchased by Ms. Seldin malfunctions by leaking and spewing boiling water in a dangerous and unexpected manner, it cannot be used for its ordinary

and intended purpose of steaming clothing without subjecting users to the risk of being burned.

**Plaintiff Fiore Purchased her My Little Steamer in December 2015 Without Knowledge of its Dangerous Nature**

44.     During the week before Christmas in December 2015, Plaintiff Fiore purchased a My Little Steamer from Bed, Bath and Beyond in Brooklyn, New York for approximately fifteen dollars.

45.     Before purchasing the My Little Steamer, Ms. Fiore looked at the packaging. She did not see any labels on the product warning that it would leak and spew boiling water.

46.     If the packaging had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Fiore would have seen the warning and acted differently and not purchased the My Little Steamer.

47.     After Ms. Fiore purchased the My Little Steamer and before she used it, she again looked at the packaging and the instructions included with the My Little Steamer, and there was no warning that it would leak and spew boiling water.

48.     If the packaging and/or instructions had contained a warning indicating that the My Little Steamer would leak and spew boiling water during use, Ms. Fiore would have seen the warning and would have acted differently and not used the My Little Steamer.

49.     Ms. Fiore began to use her Steamer in approximately April 2016 and the unit leaked and spewed boiling water and steam when she tried to use it as recommended.

50.     Specifically, Ms. Fiore attempted to use the My Little Steamer to steam a performance gown she intended to wear at a wedding in April 2016. Ms. Fiore read and followed the instructions included in the My Little Steamer package. During her use consistent with the instructions the Steamer leaked and spewed boiling water in a dangerous and unexpected manner all over her performance gown. Fiore was burned by the boiling water.

## CLASS ACTION AND CLASS REPRESENTATION ALLEGATIONS

51.     The causes of action alleged below, for declaratory and injunctive relief and for monetary damages, are appropriate for class action treatment and class certification pursuant to the governing and applicable rules of civil procedure, including Federal Rules of Civil Procedure 23(b)(1)(a), 23(b)(2), 23(b)(3) and 23(c)(4).

52.     This action is uniquely appropriate as a class action because Plaintiffs seek declaratory and injunctive relief for the entire Class arising out of actions undertaken by Defendant or failures to act, on grounds generally applicable to the Class as a whole. The entitlement of Plaintiffs and the Class to this relief will turn on application of existing, unambiguous statutory language to the Defendant's business practices and Steamer product as described more fully herein.

53.     The monetary relief sought by Plaintiffs and the class turn on readily identifiable and objectively determinable facts and standards derivable from data and documents maintained by or on behalf of Defendant and/or the Class.

54.     This action is also appropriate for class certification under Rule 23(b)(3) because the questions of law and fact common to the Plaintiffs and the Class far more than predominate over issues affecting individual members of the Class, and resolution of these issues within a class action is the superior and manageable method to achieve fair and efficient adjudication of this controversy.

55.     Plaintiffs are members of the Classes described in paragraph 57 and 59 below, and properly allege this claim on their own behalf, and on behalf of the Class who are similarly situated, against the Defendant.

56.     The members of the Class are readily identifiable from documents maintained by

11

or on behalf of the Defendant and/or Class Members, thus permitting any appropriate notice to the Class and convenient case management by the Court.

57.    Plaintiffs Vasquez and Seldin bring this action on behalf of their and all others similarly situated as representative of the following class (the "California Class"):

> All California citizens who purchased a My Little Steamer or My Little Steamer Mini from the period of four years prior to the filing of the initial complaint in this action to the date the class is certified.

58.    Excluded from the California Class are Defendant as well as all employees of this Court, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern  District of New York, the United States Court of Appeals for the Second Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

59.     Plaintiff Fiore brings this action on behalf of herself and all others similarly situated as representative of the following class (the "New York Class"):

> All New York citizens who purchased a My Little Steamer or My Little Steamer Mini from the period of three years prior to the filing of the initial complaint in this action to the date the class is certified.

60.    Excluded from the New York Class are Defendant as well as all employees of this Court, including, but not limited to, Judges, Magistrate Judges, clerks and court staff and personnel of the United States District Courts of the Eastern District of New York, the United States Court of Appeals for the Second Circuit and the United States Supreme Court; their spouses and any minor children living in their households and other persons within a third degree of relationship to any such Federal Judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.

61.     Also excluded from the both classes are any attorneys or other employees of any law firms hired, retained and/or appointed by or on behalf of the named Plaintiffs to represent the named Plaintiffs and any/or any proposed classes members or proposed class in this lawsuit

62.     Furthermore, to the extent that undersigned counsel has any legal interest to damages or other monetary relief, or other relief due to the putative class (or any other rights as potential putative class members), arising as a result of the causes of action asserted in this litigation, such interest is hereby disclaimed by undersigned counsel.

63.     Plaintiffs reserve the right to revise the definition of the classes based on facts learned during discovery.

64.     The exact number of persons in the classes, as herein identified and described, is unknown but is estimated to number in the thousands. The classes are so numerous that joinder of individual members herein is impracticable.

65.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of each class.  Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the classes and have the financial resources to do so.  Neither Plaintiffs nor their counsel has any interest adverse to those of the other members of the classes.

66.     Absent a class action, most members of the classes would find the cost of litigating their claims to be prohibitive and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

67.     Defendant has acted and failed to act on grounds generally applicable to the Plaintiffs and the other members of the classes in failing to advise consumers that the Product will not work safely, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the classes.

68.     The factual and legal basis of Defendant's liability to Plaintiffs and to the other members of the classes are the same, resulting in injury to the Plaintiffs and to all of the other members of the classes as a result of the Defendant's conduct alleged herein.  Plaintiffs and members of the classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct because they purchased a product which cannot be used safely.

69.     There are many questions of law and fact common to the claims of Plaintiffs and the other members of the classes, and those questions predominate over any questions that may affect individual members of the classes.

70.     Common questions for the California Class include but are not limited to the following:

(a)     Whether Defendant breached its implied warranties with Plaintiffs and class members;

(b)     Whether Defendant's advertising, by failing to disclose a material safety defect at the time of purchase, is unlawful, unfair, deceptive, or misleading to reasonable consumers under the UCL;

(c)     Whether Defendant's conduct violates the Cal. Bus. & Profs. Code §17200, the Cal. Civil Code §1750, and the Cal. Civil Code 17500;

(d)     Whether the My Little Steamer Products were safe for their intended purposes;

(e)     Whether a reasonable consumer would expect that the My Little Steamer

Products would be dangerous and would leak;

(f)     Whether a reasonable consumer would purchase a My Little Steamer Product had they known that it was dangerous and would leak;

(g)     Whether, as a result of Defendant's conduct, Plaintiffs and the class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief; and

(h)     The method of calculation and extent of damages for Plaintiffs and members of the Class.

71.     Common questions for the New York Class include but are not limited to the following:

(i)     Whether Defendant's advertising, by failing to disclose a material safety defect at the time of purchase, is unlawful, unfair, deceptive, or misleading to reasonable consumers under N.Y. G.B.L. §§ 349 and 350;

(j)     Whether Defendant's conduct violates N.Y. G.B.L. §§ 349 and 350;

(k)     Whether the My Little Steamer Products were safe for their intended purposes;

(l)     Whether a reasonable consumer would expect that the My Little Steamer Products would be dangerous and would leak;

(m)     Whether a reasonable consumer would purchase a My Little Steamer Product had they known that it was dangerous and would leak;

(n)     Whether, as a result of Defendant's conduct, Plaintiff and the class members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief; and

(o)     The method of calculation and extent of damages for Plaintiff and members of

the Class.

## FIRST CLAIM:
### Violations of the Consumers Legal Remedies Act,
### California Civil Code Section 1750, *et seq.,*

72.     Plaintiffs Seldin and Vasquez hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs assert this claim on behalf of themselves and the California Class Members.

73.     The California Consumer Legal Remedies Act, Section 1750 of the California Civil Code, protects consumers against fraud, unlawful practices, and unconscionable commercial practices in connection with sale of any merchandise.

74.     Plaintiffs and members of the California Class are "consumers" as defined by Civil Code Section 1761(d) because they sought or acquired Defendant's goods for personal, family, or household purposes.

75.     The My Little Steamer Products are "goods" within the meaning of Civil Code Section 1761(a) as they are tangible chattels bought for personal, family, or household purposes.

76.     Defendant's conduct of selling the My Little Steamer Products which were not fit for their intended purpose and were not sold as advertised violated and continues to violate the Consumer Legal Remedies Act by engaging in the following prohibited practices: "[r]epresenting that goods or services have . . . characteristics . . . [or] uses . . . which they do not have" (Civ. Code, § 1770, subd. (a)(5)); "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another" (Civ. Code, § 1770, subd. (a)(7)); and "[a]dvertising goods or services with intent not to sell them as advertised" (Civ. Code, § 1770, subd. (a)(9)).

77.     Plaintiffs and other members of the California Class, acting as reasonable consumers, reasonably relied upon and were deceived by Defendant's failure to disclose the

material fact that My Little Steamer Products leaked and spewed boiling water and steam in a dangerous and unexpected way while using the unit properly. Defendant knew that My Little Steamer Products posed a danger when being properly used and failed to disclose this danger.

78.    Defendant, and not Plaintiffs or members of the California Class, had exclusive knowledge, learned at least as early as the February 2016 filming alleged above, that the My Little Steamer Products malfunctioned and dangerously leaked boiling water and steam when properly used. Defendant knew that the My Little Steamer posed a risk of burning consumers who used it as instructed, and withheld this information from Plaintiffs and members of the California Class.

79.    Had Plaintiffs and members of the class known that the My Little Steamer Products malfunctioned and posed a risk of burning them with boiling water when used as instructed, they would not have purchased the products.

80.    Pursuant to section 1782(d) of the California Civil Code, Plaintiffs, on behalf of herself and the California Class seeks a Court order enjoining Defendant from such future conduct and any other such orders that may be necessary to rectify the fraudulent, unlawful, unconscionable commercial practices, and fraudulent business practices of Defendant, including requiring Defendant to cease selling My Little Steamer Products until they no longer pose a danger to consumers.

81.    On October 25, 2017, Plaintiff Seldin served a written demand on Defendant, on behalf of herself and the California Class, pursuant to Civil Code section 1782(a). Thirty days have elapsed since such demand to Defendant. Defendant has failed to make any correction, repair, replacement or other remedy within 30 days of the demand or within a reasonable time. Plaintiffs are therefore entitled to and seeks actual damages, restitution of property, injunctive relief and other relief that the Court deems proper, and reasonable attorney's fees and costs, as permitted by

Civil Code sections 1780 and 1782.

## SECOND CLAIM:
## Violations of California Business & Professions Code, Section 17200, *et seq.*,
## Unlawful and Unfair Business Acts and Practices

82.     Plaintiffs Seldin and Vasquez hereby incorporate by reference the allegations

contained in all preceding paragraphs of this complaint. Plaintiffs assert this claim on behalf of

themselves and the California Class Members.

83.     Defendant's acts and practices as detailed herein constitute acts of unfair

competition. Defendant has engaged in unlawful and unfair business acts and/or practices within

the meaning of California Business & Professions Code, section 17200, et seq. Defendant need

only violate one of the three prongs to be held strictly liable.

84.     Defendant has engaged in "unlawful" business acts and practices by selling

products which are unfit for their intended and advertised use and have not disclosed the dangers

of the products.  Defendant's business acts and practices violate California's Business and

Professions Code Section 17500, et seq. and the California Consumer Legal Remedies Act,

California Civil Code, Section 1750, et seq., as alleged herein.

85.     Plaintiffs reserve the right to identify additional provisions of the law violated by

Defendant as further investigation and discovery warrants.

86.     Defendant's failure to comply with the above statutes constitutes an unlawful

business act or practice.

87.     Section 17200 of the California Business & Professional Code also prohibits any

"unfair business act or practice."

88.     As described above, Defendant has engaged in "unfair" business acts or practices

in that it falsely advertised My Little Steamer Products by failing to disclose dangerous safety

18

defects to consumers.

89.     The gravity of the harm to Plaintiffs and the California Class outweighs any arguable utility of Defendant's conduct. Plaintiff's injury (the purchase of an unusable product) is substantial, is not outweighed by any countervailing benefit to consumers or competition and is not one that consumers could have reasonably avoided.

90.     Defendant's conduct offends California public policy tethered to the California Consumer Legal Remedies Act and the California False Advertising Law, and which are intended to preserve fair competition, to protect consumers from market distortions, and to allow consumers to make informed choices in their purchasing products.

91.     Defendant's actions are immoral, unethical, unscrupulous, and offend established public policy, and have injured Plaintiffs and other members of the California Class.

92.     Plaintiffs and members of the California Class were deceived by Defendant's failure to represent that the My Little Steamer Products were not safe for their ordinary use.

93.     Plaintiffs and members of the California Class reasonably relied on Defendant's failure to disclose the dangers of the My Little Steamer Products and with reasonable reliance that the products would perform safely and consistent with their intended use, purchased the products.

94.     Plaintiffs and members of the California Class have suffered injuries as a direct and proximate result of the unlawful and unfair business practices of Defendant in that they paid for products which they would not have purchased had they been told the truth by Defendant.

95.     Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs, on their own behalf and on behalf of the California Class, seeks restitution and a Court order enjoining Defendant from such future conduct and any other such orders that may be necessary to rectify the unlawful, unfair, and fraudulent business practices of Defendant, including

requiring Defendant to cease selling My Little Steamer Products unless or until the products work as advertised and are not unsafe for normal use.

96.     Plaintiffs bring this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the California Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**THIRD CLAIM:**
**Violations of the False Advertising Law,**
**California Business and Professions Code, Sections 17500, *et seq.,***

97.     Plaintiffs Seldin and Vasquez hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiffs asserts this claim on behalf of themselves and the California Class Members.

98.     The California False Advertising Law, Business and Professions Code sections 17500, et seq., prohibits the dissemination of statements that are untrue, misleading, and which are known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

99.     Defendant's acts and practices violated Section 17500 of the California False Advertising Law.  By failing to disclose that the Products were dangerous and defective, Defendant mislead Plaintiffs and California Class Members about the My Little Steamer Products.

100.    The safety of the Products was material to Plaintiffs and the California Class Members, who relied on the failure to disclose the safety defects at the time of purchase.  Had Plaintiffs and the Class Members known of the dangerous safety defects, they would not have purchased the My Little Steamer.

101.    Defendant's failure to disclose the dangerous safety defects had the capacity, likelihood and tendency to deceive Plaintiffs and the California Class into believing that the My

20

Little Steamer Products were safe for their intended and advertised purpose, when in fact they were not.

102.    Defendant knew or should have known with the exercise of reasonable care that consumers would rely on the lack of disclosures about safety defects about the My Little Steamer Products.

103.    Plaintiffs and members of the California Class were induced to purchase the My Little Steamer Products based on Defendant's failure to disclose its safety defects.

104.    Pursuant to section 17535 of the California Business and Professions Code, Plaintiffs, on behalf of themselves and the California Class seek restitution and a Court order enjoining Defendant from such future conduct and any other such orders as may be necessary to rectify Defendant's false advertising (i.e., failure to disclose dangerous safety defects).

105.    Plaintiffs bring this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiffs and the California Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

### FOURTH CLAIM:
### Violations of the Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Fitness (Civ. Code §§ 1791.1(b) and 1792.1.)

106.    Plaintiffs Seldin and Vasquez repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiffs assert this claim on behalf of themselves and the California Class Members.

107.    Plaintiffs and the Class are "retail buyers" within the meaning of Section 1791(b) of the California Civil Code.

108.    The Steamer products are "consumer goods" within the meaning of Section

21

1791(a) of the California Civil Code.

109.    Defendant is a "manufacturer[s]" of the Steamer products pursuant to Section 1791(j) of the California Civil Code.

110.    Defendant specifically marketed the My Little Steamer products steamers without disclosing their safety defects.  Defendant knew or should have known that Plaintiffs and the Class (1) would operate the My Little Steamer products by hand, within immediate proximity to their person, placing them at serious and foreseeable risk of burn injuries and damages from leaking boiling water and (2) that they reasonably rely on Defendant's skill or judgment to select or furnish suitable goods.

111.    Plaintiffs and the California Class did in fact purchase the My Little Steamer products with the particular purpose of steaming their clothing and other fabrics using the hand-held device and Plaintiffs and the Class did in fact reasonably rely on Defendant's skill or judgment to furnish suitable goods.

112.    By manufacturing, marketing, importing, and distributing such a product without a proper warning, Defendant breached their implied warranty of fitness for a particular purpose and are liable to Plaintiffs and the Class.

113.    Defendant's failure to warn Plaintiffs and the California Class about the defective and unsafe quality of the My Little Steamer was willful.

114.    As a proximate result of Defendant's breach of the implied warranty of fitness, Plaintiffs and the California Class have sustained damages, including but not limited to the loss in value and usefulness of the My Little Steamer products.

115.    Pursuant to sections 1791.1(d) and 1794 of the California Civil Code, Plaintiffs and the Class are entitled to damages, civil penalties and other legal and equitable relief including, a

22

right of reimbursement, as well as costs, expenses and attorneys' fees.

**FIFTH CLAIM:**
**Violations of Sections 349 and 350 of the New York General Business Law**
**(By Plaintiff Fiore On Behalf Of Herself and the New York Class)**

116.    Plaintiff Fiore repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff brings this claim under N.Y. G.B.L. §349 and §350 on her own behalf and on behalf of each class member.

117.    At all times relevant, the New York General Business Law §349 and §350 prohibited "deceptive acts and practices" and "false advertising," and declare such acts or practices as unlawful.

118.    Defendant violated these provisions by the use of deceptive, false, and misleading misrepresentations and omissions of material fact in connection with the marketing, promotion, and sale of the My Little Steamer. Defendant communicated, and continues to communicate, that the My Little Steamer steams clothing without leaking or spitting and is safe for its intended use, while failing to disclose that the My Little Steamer leaks and spews boiling water and poses a serious threat of burns with the intent that consumers, like Fiore, rely upon the omissions and misrepresentations and purchase and use the My Little Steamer.

119.    Plaintiff and class members are "consumers" as defined in §349 of the New York General Business Law.

120.    Defendant has engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. G.B.L §349 and §350.  At all times relevant, Defendant conducted trade and commerce within the meaning of Section 349 of the New York General Business Law.

121.    Further, Defendant's acts and practices were misleading in a material way. Defendant's acts and practices as described above are deceptive.

122.     Defendant's deceptive business practices adversely impacted a class of purchasers, and therefore, constitute consumer-oriented conduct under §349 of the New York General Business Law. The manufacture, distribution, and sale of the My Little Steamers were not unique to just the Plaintiff and were not private in nature.

123.     As a direct result of Defendant's deceptive acts and practices, Plaintiff and class members suffered injury.

124.     Defendant's violations of N.Y. G.B.L § 349 and § 350 have damaged Plaintiff and other class members, and threaten additional injury if the violations continue.

125.     The aforementioned acts are willful, unfair, unconscionable, deceptive, and contrary to the public policy of New York, which aims to protect consumers.

126.     Pursuant to §349 and §350 of the New York General Business Law, Plaintiff, on her own behalf and on behalf of the Class, seeks the greater of actual or statutory, as well as treble damages, costs and expenses, pre and post-judgment interest, and attorneys' fees.

127.     Plaintiff, on her own behalf and on behalf of the Class further seeks equitable relief against Defendant.  Pursuant to N.Y. G.B.L § 349(h), this Court has the power to award such relief, including but not limited to, an order declaring Defendant's practices as alleged herein to be unlawful, an order enjoining Defendant from undertaking any further unlawful conduct, and an order directing Defendant to refund to Plaintiff and the New York Class all amounts wrongfully collected or withheld.

### SIXTH CLAIM FOR RELIEF
#### Unjust Enrichment
#### (On Behalf of Plaintiff and the New York Class)

128.     Plaintiff Fiore repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.  Plaintiff Fiore brings this claim under N.Y. G.B.L. § 349 on her own

behalf and on behalf of each class member.

129.    Plaintiff Fiore and the New York class members have conferred upon Defendant a benefit, including monies paid retained by Defendant, that should lawfully be refunded because the products are dangerous and do not work as advertised.

130.    These benefits came at the expense of Plaintiff and New York class members.  As a result of Defendant's illegal and deceptive conduct, Plaintiff Fiore and New York class members suffered monetary damages.

131.    Under principles of equity and good conscience, Defendant should not be permitted to retain the money and other benefits acquired through the unlawful conduct. All funds, revenues, and benefits unjustly received by Defendant rightfully belong to Plaintiff and class members.

WHEREFORE, Plaintiffs Melissa Fiore, Cynthia Vasquez and Barbara Seldin pray that the Court enter judgment and orders in them favor against Defendant, and as follows:

a.   An order certifying the Classes, directing that this case proceed as a class action, and appointing Plaintiffs and their counsel to represent the Classes as described above;

b.   An award for restitution, injunctive relief and other equitable relief;

c.   For an award of damages;

d.   For an award of pre and post judgment interest;

e.   An order granting costs and attorneys' fees; and

f.   Such other and further relief as this Court may deem appropriate.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

25

Dated: December 14, 2018                    **GARDY & NOTIS, LLP**

By: _s/Orin Kurtz_____
      Orin Kurtz
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: (212) 905-0509
Fax: (212) 905-0508
okurtz@gardylaw.com

Christa L. Collins (*pro hac vice* forthcoming)
Florida Bar No: 0381829
service.clc@harmonwoodslaw.com;
clc@harmonwoodslaw.com
HARMON, WOODS & PARKER, P.A.
110 North 11th Street - 2nd Floor
Tampa, Florida 33602
Tel: (813) 222-3600
Fax: (813) 222-3616

J. Andrew Meyer (*pro hac vice* forthcoming)
andrew@jandrewmeyer.com
J. ANDREW MEYER, P.A.
15565 Gulf Boulevard
Redington Beach, Florida 33708
Tel: (727) 709-7668

David C. Parisi (*pro hac vice* forthcoming)
dcparisi@parisihavens.com
Suzanne Havens Beckman (*pro hac vice*
forthcoming)
shavens@parisihavens.com
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California 90405
Tel: (818) 990-1299
Fax: (818) 501-7852

*Attorneys for Plaintiffs Melissa Fiore, Cynthia*
*Vasquez and Barbara Seldin, on their own behalf,*
*and behalf of all others similarly situated*

26

## DECLARATION OF DAVID C. PARISI

I, David C. Parisi, hereby declare on oath as follows:

1.      I am an attorney licensed to practice law in the state of California. I am over the age of 18 years and I have personal knowledge of the matters attested to herein. If called upon to testify, I would and could competently do so.

2.      I make this declaration pursuant to California Civil Code section 1780(d) on behalf of my clients, Plaintiffs Barbara Seldin and Cynthia Vasquez, on behalf of themselves and all others similarly situated.

3.      The transactions or any substantial portion of the transactions alleged in this complaint occurred in San Diego County and Orange County, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated this 14th day of December 2018 at Port Hadlock, Washington.

_____
David C. Parisi